IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| First Quality Tissue SE, LLC, | ) | |
| | ) | C/A No. 8:11–2457-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| | ) | |
| Metso Paper USA, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| Clearwater Paper Corporation, | ) | |
| | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| _____ | | |

This matter is before the court on Plaintiff First Quality Tissue SE, LLC's ("FQT's") Motion for a Preliminary Injunction against Defendant Metso Paper USA, Incorporated ("Metso"). In its motion, FQT primarily seeks to enjoin Metso from delivering a Thru-Air® Dried ("TAD") machine, or any of its components, to Intervenor Clearwater Paper Corporation ("Clearwater") prior to a decision on the merits of FQT's breach of contract claim against Metso.

**Background**

On January 20, 2010, FQT entered into a contract with Metso for the purchase of a complete TAD machine to be used at a new manufacturing facility in Anderson, South Carolina. Subsequently, on June 10, 2010, FQT entered into a second contract with Metso to purchase a second TAD machine.[1] Article 23 of the second contract provides, in pertinent part:

---

[1] This contract was apparently signed in September 2010 and backdated June 10, 2010.

A. Subject to the exceptions set forth in Subsections C and D below, Metso Paper agrees that for a period commencing on the Effective Date and ending twenty-four (24) months after final delivery of the Equipment to Buyer (the Limitations Period"), Metso Paper will not sell, license, book orders for, or otherwise distribute within the United States, Canada and Mexico ("Territory") any complete TAD machines (i.e., from headbox to reel), TAD machine components and/or TAD machine automation systems. Metso Paper further agrees that it will not deliver any TAD machines, TAD machine components or TAD machine automation systems to any third party within the Territory until twelve (12) months after the end of the Limitations Period. Notwithstanding the foregoing, in the event final delivery of the Equipment is delayed by Buyer, or those under Buyer's control, the Limitations Period set forth above shall expire on September 30, 2013. "Final delivery" as used herein shall mean the complete delivery of all components of the Equipment.

B. In the event Start-Up is delayed by Metso Paper or those under Metso Paper's control, the Limitations Period set forth in Subsection A above shall be extended for the same period as the delay in Start-Up hereunder.

C. Notwithstanding the foregoing, Buyer acknowledges that Metso Paper may engage in the following activities before, during and after the Limitations Period:

(i) Metso Paper may provide individual replacement components for any TAD machines manufactured by Metso Paper or unaffiliated third parties existing at any time durign the Limitations Period.

(ii) Metso Paper may sell complete TAD machines (or components thereof) or automation systems to Kimberly Clark, Proctor & Gamble, Georgia-Pacific, SCA and any entity that after the Effective Date acquires the TAD manufacturing assets of any of the four aforementioned companies and any existing customers of Metso Paper can demonstrate having provided and continue to provide complete TAD machines to within the Territory, or any one, but only one, specific potential customer Metso Paper can reasonably demonstrate through documentary evidence as having previously invested substantial sales efforts to sell Metso Paper's TAD process and equipment within the Territory prior to the date hereof, or any of their respective successors, wholly-owned affiliates or affiliates' successors.

(Dkt. #  21 Ex. 2 at 24).

In May 2010, Clearwater, a company based out of Spokane, Washington, announced its plans to build a TAD paper machine facility in Shelby, North Carolina. Clearwater has contracted with Mesto to purchase a TAD machine and FQT alleges that, although Article 23.C allows Metso to sell complete TAD machines in North America during the limitations period under certain enumerated exceptions, the sale to Clearwater does not meet any of these allowable exceptions. Accordingly, FQT alleges the proposed sale violates Article 23.  On August 2, 2011, FQT filed this action in state court and it was removed to this court on October 20, 2011.  Thereafter, FQT filed, inter alia, an Amended Complaint and this motion for preliminary injunction.  On December 1, 2011, the court held a hearing on the preliminary injunction motion and took the matter under advisement.

## DISCUSSION

A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief pendente lite of the type available after the trial. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524–26 (4th Cir. 2003). "A preliminary injunction is an 'extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances.'" *MicroStrategy Inc. v. Motorola, Inc.,* 245 F.3d 335, 339 (4th Cir. 2001).  Generally, the goal of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp.,* 333 F.3d at 525.

In *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7  (2008),  the Supreme Court set forth four requirements which must be shown to obtain a preliminary injunction.  The plaintiff must establish "1)  that he is likely to succeed on the merits, 2) that he is likely to suffer irreparable harm in the absence of preliminary relief, 3) that the

balance of equities tips in his favor, and 4) that an injunction is in the public interest." 555 U.S. at 20.  Each of the four requirements set forth in *Winter* must be independently satisfied in order for a preliminary injunction to issue. *Id*.  A failure to establish any of the elements necessary for relief is fatal to the request for a temporary restraining order. *Id*.

Specifically, a showing of irreparable injury is mandatory even if the plaintiff has already demonstrated a strong showing on the probability of success on the merits. *Real Truth About Obama, Inc. v. Federal Election Com'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, ––– U.S. –––, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010). *See also Pan Am Flight 73 Liaison Group v. Dave*, 711 F.Supp.2d 13, 33 (D.D.C. 2010) (holding that the plaintiff's failure to demonstrate that "it will suffer irreparable harm without an injunction, a prerequisite for the extraordinary relief it seeks" was "fatal to its request for a preliminary injunction").  When analyzing the irreparable harm element, there are two inquiries: 1) whether the plaintiff is indeed suffering actual and imminent harm; and 2) whether that harm is truly irreparable, or whether it can be remedied at a later time with money damages. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir.1991). *See also Sterling Commercial Credit—Mich., LLC v. Phoenix Indus. I, LLC,* 762 F. Supp 2d 8, 14–15 (D.D.C. 2011) ("First, the injury must be both certain and great; it must be actual and not theoretical. . . .  Second, the injury must be beyond remediation.").  Furthermore, if a court is able to resolve the case on the merits before the injury would occur, there is no need for interlocutory relief. *See, e.g., In re Microsoft*, 333 F.3d at 525-26 (holding "a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits."); 11A Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 2948.1, at 139-49 (2d ed.1995).

At the hearing and in its filings with the court, Metso has represented to the court

that the delivery of the TAD machine to Clearwater will not begin before March 1, 2012, and will not be completed prior to at least June 15, 2012, and the machine will not be operational until sometime in the latter half of 2012. Metso also states that "No material aspect of the equipment to be delivered before June 15, 2012, is unique to a TAD machine. Virtually all of it is commonly used in conventional tissue machines." (Dkt. # 81- Metso's Mem. at 3). FQT does not dispute these statements or offer any reason for the court to doubt Metso's statements. Further, it appears at this time that an expedited trial will occur prior to the completed delivery of the TAD machine to Clearwater in June 2012 and prior to the TAD machine being operational. Therefore, the court finds FQT has failed to demonstrate immediate irreparable harm at this time.[2] Because a plaintiff must satisfy all four prongs of the *Winter* test in order to obtain a preliminary injunction, *see Real Truth About Obama, Inc.*, 575 F.3d at 346, it is unnecessary for this court to consider whether FQT is likely to succeed on the merits, the balance of equities, and whether an injunction would be in the public interest. Based on the foregoing, the Motion for a Preliminary Injunction (Dkt. # 20) is **DENIED** without prejudice.

    **IT IS SO ORDERED.**

                                                 s/Timothy M. Cain
                                                 United States District Judge

Greenville, South Carolina
December 9, 2011

---

[2] The court notes that as an intervenor, Clearwater is subject to any order issued by the court including a permanent injunction if one were to be granted following a trial.

5